IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WILLIAM A.**[1], <br><br> Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br> Defendant. | Case No. 1:18-cv-1161-SI <br><br> **OPINION AND ORDER** |

Katherine Eitenmiller and Mark A. Manning, HARDER WELLS BARON & MANNING, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; L. Jamala Edwards, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff William A. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

social security income ("SSI") and child's insurance benefits based on disability. Because the Commissioner's findings are not supported by substantial evidence, the decision is **REVERSED** and this case is **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff is currently 28 years old. He filed his application for benefits on March 31, 2014, alleging that his disability began on January 1, 2008. He claimed disability due to agoraphobia, general anxiety disorder, panic disorder, post-traumatic stress disorder ("PTSD"), and depression. AR 68. The Commissioner denied his application initially (AR 68) and on reconsideration (AR 97). In January 2015 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 21. The ALJ conducted a hearing by video-conference in January 2017, concluded that Plaintiff is not disabled, and issued a written decision denying Plaintiff's application. AR 34. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review in April 2018. AR 165. Plaintiff seeks judicial review of the Commissioner's final decision. ECF 1.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since January 1, 2008, the alleged onset date. AR 23. At step two, the ALJ found that Plaintiff suffered from three medically determinable impairments: general anxiety disorder with agoraphobia, PTSD, and depressive disorder. AR 23-24. The ALJ considered these impairments "severe in combination, if not singly." AR 24. The ALJ determined that Plaintiff's alleged bipolar disorder was not a medically determinable impairment and that Plaintiff's obesity was not a severe impairment. AR 24-25. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Between step three and step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). AR 27. The ALJ added the following limitations:

> [T]he claimant cannot have exposure to hazards such as machinery
> or unprotected heights. The claimant can understand, remember,
> and carry out only short, simple, instructions, and can make only
> simple work-related judgments and decisions. The claimant can
> have no more than occasional proximity interactive work with the
> public, coworkers and supervisors. The claimant can perform goal-
> oriented but not fast-paced work and can tolerate occasional
> changes in routine work settings.

*Id.* At step four, the ALJ found that Plaintiff could not perform his past relevant work. AR 32. At step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including small products assembler, electronics worker, and plumbing hardware assembler. AR 33.

## DISCUSSION

Plaintiff contends that the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by: (1) improperly weighing the medical opinion testimony of Nurse Smith, Nurse Bush, and Ms. Johansson (the three "non-acceptable" medical sources); (2) improperly rejecting Plaintiff's subjective symptom testimony, and (3) improperly rejecting lay witness testimony.

### A. Medical Opinion Testimony

#### 1. "Non-Acceptable" Medical Sources and Treating Sources

Social Security Rule ("SSR") 06-03p[2] in effect when Plaintiff filed his claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed

---

[2] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. Even before the rescission, the Ninth Circuit noted that "the [social security] regulations provide an outdated

optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Nurse Smith and Nurse Bush are Psychiatric Nurse Practitioners and Ms. Johansson is a Licensed Social Worker, each of them is a "non-acceptable," or "other," medical source.

An ALJ may not reject the competent testimony of "non-acceptable" or "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ must give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." 20 C.F.R. §§ 404.1512(b)(v), 416.912(b)(v).

---

view that consider a nurse practitioner an 'other source'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).

Sometimes after applying the factors for weighing "other" medical opinion evidence, an ALJ may properly find that an opinion from "non-acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.*

This caveat is particularly poignant when a "non-acceptable" medical source is the claimant's treating provider. The ALJ generally will give more weight to opinions from treating providers, because they have treated the claimant over a period of time and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone" or from one-time evaluations performed by consulting physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

The ALJ nevertheless serves as "the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). In that capacity, the ALJ is responsible for making credibility determinations, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir 2009). But "even when contradicted, a treating or examining physician's opinion is still

owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633).

### 2. Medical Opinion Sources

#### a. Nurse Smith

Nurse Smith provided two medical opinions: one in October 2014 and another in August 2015. In October 2014, Nurse Smith wrote that it was "impossible" for Plaintiff to hold down a job. AR 345. She stated that it was "very difficult for him at times to leave his home and function in a work setting" because of his PTSD, agoraphobia, depression, panic attacks, hallucinations, and nightmares. *Id.* In August 2015, Nurse Smith indicated that Plaintiff had severe or marked impairments in almost every mental functional domain, and that he would miss more than four days of work per month because of "frequent panic attacks" and "angry outbursts" caused by PTSD. AR 347.

The ALJ gave Nurse Smith's October 2014 assessment "little weight" because "[a] nurse practitioner is not an acceptable medical source and only acceptable medical sources can make a diagnosis" and because "the suggestion that the claimant is unable to work is one requiring a legal conclusion reserved for the Commissioner." AR 30. The ALJ gave Nurse Smith's August 2015 assessment of Plaintiff's mental function "some weight" because Nurse Smith is a nurse practitioner, not an "acceptable medical source." *Id.* The ALJ also "noted" that in both instances Nurse Smith's opinion was not "consistent with the opinion of [the examining medical source], or with the opinions of state agency consultants." *Id.* The ALJ did not specify or identify these inconsistencies.

The ALJ pointed only to Nurse Smith's status as a "non-acceptable" medical source—not to any particular inconsistencies—to justify discounting her opinions. This was legal error. Plaintiff persuasively argues that the ALJ did not reject Nurse Smith's opinion *because* of a

conflict with other evidence. The ALJ only "noted" unspecified inconsistencies. The ALJ explicitly did not cite them as a reason for rejecting Nurse Smith's medical opinion. The mere fact that a healthcare provider is not an acceptable medical source is not a germane reason to reject their opinion. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding that provider's status as a "non-acceptable" medical source was not a germane reason to reject her opinions—even where the provider supplied information by filling out a check-box form).

If an ALJ could reject a treatment provider's opinion based on status alone, the six factors listed in SSR 06-03p would be meaningless and the opinion of a "non-acceptable" medical source could never outweigh that of an "acceptable" medical source. The ALJ did not mention the length of Plaintiff's relationship with Nurse Smith or the frequency of visits. Yet the record shows that Nurse Smith saw Plaintiff monthly for more than a year—from May 2013 to at least October 2014. AR 277-93. Nurse Smith also prescribed several different psychiatric medications to Plaintiff during the course of treatment, and no other physician treated Plaintiff concurrently. AR 282, 284, 285, 291. Thus, during this period, Nurse Smith was, for all practical purposes, Plaintiff's "treating" healthcare provider.

The ALJ also did not discuss the quality of Nurse Smith's explanation for her opinion, nor the extensive medical documentation supporting it. The ALJ also called Nurse Smith a "nurse practitioner," which is only partially correct. AR 30. Nurse Smith is a "PMHNP"—a Psychiatric Mental Health Nurse Practitioner. The ALJ did not consider Ms. Smith's specialty or expertise related to Plaintiff's psychiatric impairment, even though the provider's relevant expertise is one of the factors to consider when assessing non-acceptable medical source opinions. *See* SSR 06-03p.

The ALJ also was incorrect to disregard Nurse Smith's October 2014 opinion simply on the ground that it was a "legal opinion." Although an opinion that a plaintiff is disabled is not a medical opinion under the Social Security Act, the ALJ still must consider the opinion along with "all the other medical findings and other evidence that support a medical source's statement that [plaintiff] is disabled." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ did not consider Nurse Smith's opinion that Plaintiff is disabled. This was legal error. Even if the ALJ were not inclined to give Nurse Smith's conclusion substantial weight, the ALJ still should have addressed Nurse Smith's opinions on Plaintiff's underlying impairments. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (distinguishing between an impairment—a purely medical condition, and a disability—an administrative determination of how an impairment affects the claimant's ability to engage in gainful activity and is reserved for the Commissioner).

### b. Nurse Bush and Ms. Johansson

Nurse Bush is a PMHNP who saw plaintiff every three weeks from June 2016 to November 2016. She described Plaintiff's struggles with PTSD, severe anxiety, uncontrolled emotional outbursts, impaired concentration, cognition, and memory in more than 50 pages of medical records. AR 369-420. She opined that Plaintiff was "not functioning mentally at the level necessary to hold any type of gainful employment." AR 365. The ALJ gave less weight to Nurse Bush's opinion because she is not an acceptable medical source. AR 30. As the ALJ did in her evaluation of Nurse Smith's medical opinions, the ALJ briefly mentioned inconsistencies with other medical sources but did not specify or elaborate on them or even cite them as a reason for rejecting Nurse Bush's medical opinion. *Id.* The ALJ relied solely on Nurse Bush's status as a "non-acceptable" medical source to discount her opinion. This is not a germane reason to dismiss Nurse Bush's testimony and constitutes legal error. *See Popa*, 872 F.3d at 907.

Ms. Johansson is a licensed social worker who served as Plaintiff's primary mental health therapist as of December 2016. AR 421. Ms. Johansson generally concurred with Nurse Smith and Nurse Bush. She wrote that it would be "extremely difficult" for Plaintiff to find a job "in any conceivable setting, even a sedentary, low skill job environment." AR 422. The ALJ dismissed Ms. Johansson's opinion because "a social worker is not an acceptable medical source and only acceptable medical sources can give a medical opinion or make a diagnosis." AR 30. It was improper for the ALJ summarily to dismiss Ms. Johansson's medical opinion that Plaintiff could not work based only on Ms. Johansson's status as a non-acceptable medical source. *See Popa*, 872 F.3d at 907. It was, however, proper for the ALJ to discount Ms. Johansson's comment that Plaintiff was limited to sedentary work. No other provider suggested any exertional limitations, and the medical record lacks any evidence supporting exertional limitations. *See Bray,* 554 F.3d at 1228 (noting that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.").

## B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"[3] *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ summarized Plaintiff's symptom testimony in her decision. AR 28. She noted that Plaintiff alleged a long history of mental illness that made him unable to work. *Id.* Plaintiff reported a history of panic attacks, avoidance of public places, anxiety, and agoraphobia. *Id.* These symptoms allegedly impacted "virtually every aspect of his life." AR 417. Contact with strangers allegedly made these symptoms worse and brought on dizziness and fainting spells. AR 28. Plaintiff stated that the effect of these symptoms was that he could not walk outdoors due to panic, unable to pay attention or focus on tasks, and had trouble following instructions. He added that sometimes he needs to read things two or three times to understand them. AR 56. Plaintiff's mental health reportedly deteriorated even more after he witnessed his mother die. AR

---

[3] The government argues that the ALJ properly discounted Plaintiff's symptom testimony based on substantial evidence. ECF 17 at 6. Ninth Circuit law forecloses this argument. The clear and convincing standard is the correct measure to apply when considering whether to discount a claimant's own symptom allegations. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

284. He began to have nightmares and flashbacks to his mother's death. *Id.* He reported more difficulty leaving the house and told his treatment provider that he had seen his dead mother in public. AR 337. Eventually, he stated that he was only leaving his house for "survival needs." AR 399.

At the administrative hearing, Plaintiff testified that he "could not tolerate being in a room full of people." AR 57. He also described how he was prone to "verbal outbursts," "sudden bursts of rage," and "blow-up[s]" towards people when he became anxious or frustrated. AR 56, 277, 391. He reported that lost his job as a dishwasher at an assisted living facility after he got into a fight with a resident's family member. AR 48. He also described how he had a "nervous breakdown outburst" towards his attorney's secretary a day earlier. AR 56. The month before the hearing, Plaintiff threatened to "burn the building down" upon learning that his medication refills were not ready yet. AR 368.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the framework. AR 29. The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Despite the ALJ's relatively detailed account of Plaintiff's symptom testimony, for the most part she did not specify "which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. She only stated that "support for the claimant's assertions is weakened by the extent to which his assertions of impairment-related symptoms are inconsistent with other evidence in the record." AR 31. Which "assertions of impairment-related symptoms" are inconsistent with which "other evidence in the record" goes largely unsaid. This is legal

error. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (finding that general rejection of claimant's testimony was insufficient and that ALJ committed legal error when she did not specify what testimony she rejected and why); *Treichler v. Comm'r*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) ("The ALJ did not . . . specifically identify the testimony he found not credible. . . This was error and falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based.").

The ALJ rejected only three portions of Plaintiff's testimony for specific reasons: (1) that Plaintiff did not require any special reminders to take care of basic personal needs (because it was inconsistent with Plaintiff's statement to examiner that he needed reminders to groom himself), (2) that Plaintiff could perform basic tasks like working on a computer and reading (because it was inconsistent with a nurse practitioner's opinion that Plaintiff's concentration is poor), and (3) that Plaintiff could not leave the house (because it was inconsistent with his report that he collected cans and returned them to the store). AR 31-32. Even assuming these are clear and convincing reasons, they are proper grounds for discounting only the three specific portions of testimony that the ALJ identified, not every "assertion[] of impairment-related symptoms" that the ALJ listed on the previous page.[4] AR 31. To view these inconsistencies as general, or blanket, indicators of Plaintiff's credibility is the type of "wide-ranging scrutiny of the claimant's

---

[4] The Court need not decide whether these inconsistencies are clear and convincing reasons to reject Plaintiff's testimony. Nevertheless, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The failure to recognize the difference between activities of daily living and the requirements of a full-time job is a "recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Garrison*, 759 F.3d at 1016.

PAGE 15 – OPINION AND ORDER

character and apparent truthfulness" that ALJs are supposed to avoid. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the ALJ committed legal error by discounting the entirety of Plaintiff's symptom testimony based on three specific instances.

## C. Lay Witness Testimony

Plaintiff objects to the ALJ's partial dismissal of reports from Plaintiff's girlfriend and Plaintiff's former work supervisor. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, F.3d at 1053. Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quotation marks omitted). The ALJ must give "germane reasons" for rejecting lay witness testimony. *Dodrill*, 12 F.3d at 919.

The ALJ properly considered and rejected the lay testimony of Plaintiff's girlfriend and his former work supervisor. The ALJ assigned "some weight" to his girlfriend's testimony because she suggested limitations more restrictive than either the examining physician or the state agency consultants. AR 31. The ALJ rejected the supervisor's opinion because it was inconsistent with the same two sources. *Id.* These inconsistencies are germane reasons for rejecting both pieces of lay witness testimony.[5]

---

[5] The identified inconsistencies are germane reasons for rejecting the lay witness testimony but not the medical source opinion testimony for two reasons. First, the ALJ cited the inconsistencies as a reason for rejecting the lay witness testimony. The ALJ relied only on the "non-acceptable" status of the medical sources to discount their opinions and just noted the inconsistencies tangentially. Second, the six SSR 06-03p factors—and Nurse Smith's status as a treating provider—buttress the medical source opinions but weigh against the lay witness testimony.

### D. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible errors in assessing the medical source opinions of Nurse Smith, Nurse Bush, and Ms. Johansson. The ALJ also did not provide a legally sufficient

rationale for rejecting Plaintiff's symptom testimony. The Court cannot, however, find that the record as a whole is free from all conflicts and ambiguities.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is **REVERSED AND REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 26th day of December, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge